UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL H.,<br><br>            Plaintiff,<br><br>    v.<br><br>ANDREW SAUL,<br><br>            Defendant. | Case No. 20-cv-05783-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 20, 22, 25 |

Plaintiff seeks social security benefits for physical impairments, including: chronic back pain, herniated discs, arthritis in neck and back, and carpal tunnel syndrome in both hands. (Administrative Record ("AR") 252.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his benefits claim. Now before the Court are Plaintiff's and Defendant's motions for summary judgment.[1] (Dkt. Nos. 20, 22.) After careful consideration of the parties' briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings. Because the Administrative Law Judge ("ALJ") erred in his weighing of medical evidence and subjective pain symptom testimony, but there are outstanding issues to be resolved remand for further proceedings is proper.

//

//

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 2 and 10.)

**BACKGROUND**

**A. Procedural History**

Pursuant to the Social Security Act (the "Act"), on July 14, 2018, Plaintiff filed: (1) an application for a period of disability and disability insurance benefits under Title II of the Act; and (2) an application for supplemental security income benefits under Title XVI of the Act. (AR 15.) For each, Plaintiff alleged a disability onset of September 1, 2011. (*Id.*) Plaintiff's application was denied initially and upon reconsideration. (*Id.*) Plaintiff then submitted a request for a hearing before an ALJ and his hearing was held on September 5, 2019. (AR 28-66.)

As a threshold matter, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2016. (AR 17.) At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2011, the alleged onset date. (AR 17.) At Step Two, the ALJ found that Plaintiff had the following severe impairments: mild to moderate degenerative disc disease of the lumbar spine from the L1 to the S1, but with no evidence of nerve root impingement or severe stenosis, and chronic low back strain/sprain. (AR 17-18.) At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416,920(d), 416.925, and 416.926). (AR 18.) The ALJ next determined Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could occasionally perform postural activities of bending, stooping, crouching, crawling, kneeling, and climbing of ramps and stairs, and he could frequently perform manipulations bilaterally, i.e. handling, fingering, and feeling, and that he had no mental limitations. (AR 18-19.) At Step Four, the ALJ found that Plaintiff was capable of performing past relevant work as a Customer Service Representative because that job does not require performance of work-related activities precluded by Plaintiff's residual functional capacity (20 CFR 404.1520(f), 404.1565, 416.920(f), 416.965). (AR 21-22.) Plaintiff subsequently appealed to the Appeals Council which found no reasons to review the ALJ's decision and denied Plaintiff's request for review. (AR 1.)

In accordance with Civil Local Rule 16-5, the parties filed cross motions for summary judgment. (Dkt. Nos. 20, 23.)

**B. Issues for Review**

1. Did the ALJ err in evaluating the medical evidence?
2. Did the ALJ err in evaluating Plaintiff's subjective pain testimony?
3. Did the ALJ err in determining Plaintiff's severe impairments?
4. Did the ALJ err in determining Plaintiff's residual functional capacity and Plaintiff's ability to perform his past work?
5. Should the Court remand for payment of benefits or further proceedings?

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," ("RFC") the claimant can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. § 416.920(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and

1  citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the
2  ALJ's conclusion that must be upheld." *Id*. In other words, if the record "can reasonably support
3  either affirming or reversing, the reviewing court may not substitute its judgment for that of the
4  Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal
5  quotation marks and citation omitted). However, "a decision supported by substantial evidence will
6  still be set aside if the ALJ does not apply proper legal standards." *Id*. A court "must consider the
7  entire record as a whole, weighing both the evidence that supports and the evidence that detracts from
8  the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of
9  supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

## DISCUSSION

### A. Medical Opinion Evidence

In assessing medical opinion evidence, Ninth Circuit courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non[-]examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a non-examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (internal citations omitted). And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (internal citations omitted). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31 (internal citations omitted).

For benefits applications filed after March 27, 2017, such as this one, the Social Security Administration's regulations and several Social Security Rulings regarding the evaluation of medical evidence have been amended, including SSR 96-2p ("Titles II and XVI: Giving Controlling Weight to

Treating Source Medical Opinions"). "The new regulations provide that the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" *V.W. v. Comm'r of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)). "Instead, the Commissioner will evaluate the persuasiveness of all medical opinions based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as 'evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.'" *P.H. v. Saul*, No. 19-CV-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (quoting 20 C.F.R. 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5)). "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'" *V.W.*, 2020 WL 1505716 at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853).

### 1. The ALJ's Consideration of the Medical Opinion Testimony

Because Plaintiff did not provide a source medical statement from a treating physician, the ALJ relied on other physician opinions. In particular, the evaluations of the Disability Determination Service evaluators, Drs. Y. Ruo, M.D. and K. Rudito, M.D who "opined that Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently, can stand and/or walk for 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; can occasionally climb (but should avoid climbing ladders), balance, kneel, crouch, and crawl; and can frequently perform gross and fine manipulations with the bilateral upper extremities." (AR 20.) The ALJ found Dr. Ruo and Dr. Rudito's opinions to be more "persuasive because they are consistent with the record which indicates Plaintiff only received routine, outpatient care for his back." (AR 20.)

The ALJ also relied on the opinion of Dr. Bayne, who examined Plaintiff at the request of the State agency in August 2018. In contrast to Drs. Ruo and Rudito, Dr. Bayne opined that Plaintiff "should be able to stand and walk with appropriate breaks and with use of a cane for support for 4 hours during an 8-hour workday; should be able to sit with appropriate breaks for 4 hours during an 8-hour workday; repetitive bending, twisting, crouching, crawling, stooping, climbing up and down

stairs, inclines, ramps or ladders should be limited to occasionally; he should be able to lift and carry 10 pounds frequently and 15 pounds occasionally; and gripping, grasping, pushing, pulling, or performing bilateral repetitive finger, hand and wrist manipulations should be limited to occasionally." (AR 21.) The ALJ found Dr. Bayne's opinion only partially persuasive because Dr. Bayne "considered the claimant's subjective allegations of carpal tunnel syndrome and lumbar radiculopathy, which are not otherwise supported in this record." (AR 21.)

Plaintiff contends the ALJ erred by weighing the opinions the Drs. Ruo and Rudito over the opinion of Dr. Bayne.  While the new Social Security "regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Christopher Charles A. v. Comm'r of Soc. Sec.*, No. C19-5914-MLP, 2020 WL 916181, at *2 (W.D. Wash. Feb. 26, 2020) (citing 20 C.F.R. §§ 404.1520c(a) and (b) (1), 416.920c(a) and (b) (1)). "Further, the ALJ is required to specifically address the two most important factors, supportability and consistency." *V.W.*, 2020 WL 1505716 at *14 (citing 20 C.F.R. § 416.920c(b)).

The ALJ failed to adhere to these requirements for weighing medical opinions when he assigned little weight to Dr. Bayne's opinion and favored the opinions of evaluators Dr. Ruo and Dr. Rudito.  First, the ALJ's boilerplate statement that Dr. Ruo and Dr. Rudito's opinions are "persuasive because they are consistent with the record" does not adequately explain the basis for his opinion.  (AR 21.)  *See Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) ("an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

Second, the ALJ's explanation for giving little weight to Dr. Bayne's opinion misstates the evidence.  In particular, the ALJ stated that "[t]o the extent that Dr. Bayne's opinion is inconsistent with the residual functional capacity determined here, I find it only partially persuasive because he considered the claimant's subjective allegations of carpal tunnel syndrome and lumbar radiculopathy, which are not otherwise supported by the record." (AR 21.)   This finding, however, ignores that Dr. Bayne's limitations were supported by more than just Plaintiff's self-reported radiculopathy and carpal

tunnel syndrome; namely, Dr. Bayne's own physical examination of Plaintiff. (AR 362-367.) Dr. Bayne's examination indicated positive straight leg raising on the left side at 60 degrees with radiculopathy and decreased sensation to pinprick and light touch over the left L5 dermatome distribution. (AR 364.) Additionally, Dr. Bayne reported Plaintiff "ambulated with a slow antalgic gait…and was unable to walk on his heels and toes," and that he was only able to squat to 50 percent of normal because of back pain. (AR 363.)  Further, during exam Plaintiff "had a positive Tinel's test and positive Phalen's test for bilateral carpal tunnel syndrome."  (AR 363.)  The ALJ did not discuss any of these findings by Dr. Bayne or Dr. Bayne's proposed additional functional limitations in the context of these findings. (AR 364.)

Finally, as discussed below, because the ALJ erred in rejecting Plaintiff's subjective pain testimony, he also erred in rejecting Dr. Bayne's opinion to the extent that it was based on the improperly discounted pain testimony.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Accordingly, the ALJ erred in his weighing of the medical evidence, and in particular, Dr. Bayne's opinions regarding Plaintiff's residual functional capacity.

### B. Plaintiff's Subjective Symptom Testimony

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (internal quotation marks and citation omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Applying the two-step analysis, the ALJ first determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 20.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and

convincing reasons" for rejecting Plaintiff's testimony regarding the severity of his symptoms, or else find evidence of malingering. *Lingenfelter*, 504 F.3d at 1036. Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 20.) The ALJ provided two reasons for this conclusion: (1) Plaintiff's "subjective complaints as to severe low back pain with radiculopathy down his left leg resulting in chronic severe pain [wa]s not supported by or consistent with his own treatment history" and (2) Plaintiff received minimal outpatient care. (AR 22.) However, neither of these reasons meets the "specific, clear, and convincing." *Lingenfelter*, 504 F.3d at 1036.

### 1) Testimony Inconsistent with Treatment Records

First, the ALJ found that Plaintiff's pain testimony was inconsistent with his treatment records. (AR 20.) At his hearing, Plaintiff testified he experiences consistent severe back pain with radiculopathy down his left leg that prevents him from working. (AR 19, 39.) This testimony is consistent with Plaintiff's complaint in October 2018 that he experienced "agonizing sharp pain in L lumbar spine (8/10) with radiating [symptoms] down left posterior butt, leg, calf, foot." (AR 375.) Plaintiff's October 2018 MRI report documents multilevel degenerative disc disease with facet arthropathy, neuroforaminal narrowing, canal stenosis, disc desiccation, and height loss. (AR 369-370.) While there was no evidence of nerve root involvement or spinal compression, the MRI did show multilevel degenerative disc disease which is consistent with Plaintiff's pain testimony. (AR 20.) The ALJ appears to have placed great weight on a note in Plaintiff's MRI report that among those in Plaintiff's age demographic "with no back pain" that "70-80% have disk degeneration or signal loss," "60% have disk height loss or a bulging disk," and "30% have annular fissure, disk protrusion or facet degeneration," but this non-specific observation is not a clinical finding, and instead is cabined by the note that "*some* findings are so common in healthy volunteers that they must be interpreted *within the clinical context*." (AR 18 (citing AR 442 (emphasis added)).)

As discussed above, Plaintiff's reports of radicular pain were consistent with Dr. Bayne's examination which reflected "[s]traight leg raising on the left was 60 degrees with radiculopathy

8

and on the right was 90 degrees with back spasms." (AR 364.) Additionally, the examination showed Plaintiff had "decreased sensation to pinprick and light touch over the left L5 dermatome distribution." (AR 364.)  In addition, Plaintiff's reports of pain are consistent with his November 2018 physical therapy evaluation where he was noted to ambulate with a cane, his left knee was "flexed in stance," he had an "antalgic gait" with a "forward flexed position" posture, and "demonstrated increased shooting pain with palpation to the left piriformis in hooklying."  (AR 376.)

Finally, the ALJ's reliance on the fact that Plaintiff had "no injections, no surgery, and no surgery planned" and was "not even taking any pain medication prescribed or over the counter" was in error as these findings are contradicted by the record. (AR 21.) Namely, the record shows that Plaintiff takes daily anti-inflammatory medications for pain, including Tylenol, 200mg of Ibuprofen, and ues Diclofenac Sodium gel. (AR 362, 377, 378, 382.) While Plaintiff testified that he did not take pain medication due to fears it would aggravate a cyst on his kidney (although there was no medical support for his concern), Plaintiff did pursue a number of other treatments in addition to taking the over-the-counter medications specified above. (AR 19-20.) In particular, the record shows Plaintiff received 2-3 epidural injections, which did not provide long-term relief. (AR 21, 375, 378.) Plaintiff also pursued chiropractic treatment, massage, and frequent application of ice and heat. (AR 362, 376, 382.)  Plaintiff also tried acupuncture and a TENS unit, but Plaintiff found these unhelpful. (AR 362, 376, 382).

Because the ALJ failed to consider the above evidence in Plaintiff's treatment records when rejecting Plaintiff's subjective reports of pain, the ALJ's finding was not supported by specific, clear, and convincing reasons.

2)  **Minimal Outpatient Care**

Second, the ALJ rejected Plaintiff's subjective symptom testimony because the "treatment records indicate minimal routine outpatient care to date." (AR 20.)   However, to the extent that the ALJ relied on the absence of treatment records from 2011 and 2018, the ALJ failed to take into account that Plaintiff lost his job and became homeless in 2011. (AR 240, 363); *see also Orn*, 495 F.3d at 638 ("[A]n adjudicator must not draw any inferences about an individual's symptoms and

their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.") (internal citations and quotation marks omitted).   Likewise, to the extent that the ALJ relied on Plaintiff's failure to pursue physical therapy following his November 2018 evaluation, the ALJ ignored Plaintiff's testimony that his medical coverage lapsed in November or December 2018.  (AR 20, 31.)  The ALJ erred by not considering these other explanations as to why Plaintiff failed to obtain care.  *See Orn*, 495 F.3d at 638 ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.") (internal citations omitted).

In sum, the ALJ erred by failing to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of his symptoms. *Lingenfelter*, 504 F.3d at 1036.

\*\*\*

Because the ALJ's consideration of the medical evidence and Plaintiff's subjective pain testimony are not supported by substantial evidence, the ALJ's decision cannot stand. Given this, the Court need not consider Plaintiff's related additional arguments that the ALJ erred at Step Three when he failed to find that Plaintiff's impairments were not severe and at Step Four when he determined Plaintiff has the residual functional capacity to perform light work. The ALJ's errors here go to the heart of the disability determination and are not harmless. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.") (internal quotation marks and citations omitted); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

**C. Remand**

When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to

remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). A remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal quotation marks and citation omitted).

      Here, the first prong of the test is not satisfied because the record has not been fully developed. There are outstanding issues that must be resolved before a final determination can be made given the Court's conclusion that the ALJ erred with respect to his weighing of the medical evidence and Plaintiff's symptom testimony. The second prong of the test has been satisfied, as discussed above, because the ALJ gave legally insufficient reasons for both according little weight to Dr. Bayne's opinion and discounting Plaintiff's symptom testimony. The third prong, however, is not satisfied. It is not clear from the record that the ALJ would be required to find Plaintiff disabled were the evidence properly credited.  With respect to Plaintiff's back pain, the VE testified that Plaintiff could perform his past relevant work consistent with the limitations recommend by Dr. Bayne with an accommodation. (AR 61-62.)  *See Loop v. Colvin*, 651 F. App'x 694, 696 (9th Cir. 2016) (rejecting the claimant's argument that the ALJ erred in considering whether past relevant work could be performed with an accommodation in a call center job (such as the job at issue here) "because the gist of the vocational expert's testimony was that allowing a sit/stand option is commonplace in call center workplaces, and this is how the call center job is generally performed in the national economy). Further, with respect to Plaintiff's bilateral hand manipulations, while the Court finds that the ALJ erred in failing to consider Dr. Bayne's findings regarding Plaintiff's positive Tinel's test and positive Phalen's test for bilateral carpal tunnel syndrome, Plaintiff also testified that carpal tunnel syndrome had subsequently been ruled out by his doctor.  (AR 44, 363.)   Thus, the record must be fully developed regarding Plaintiff's bilateral hand manipulation limitations. Further proceedings are therefore warranted.

      On remand, in addition to properly weighing Dr. Bayne's opinion and Plaintiff's pain

11

symptom testimony, the ALJ must determine the severity of Plaintiff's impairments and Plaintiff's residual functional capacity in light of this evidence.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

This order disposes of Docket Nos. 20 and 22.

**IT IS SO ORDERED.**

Dated: September 10, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge